# UNITED STATES DISTRICT COURT

### for the
### District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 6:24-mc-812 |
| A Motorola cellphone, model XT2005-3, with IMEI number 359113102996970 with a blue case with black graffiti markings, currently in custody at the ATF Eugene Field Office | ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A Motorola cellphone, model XT2005-3, with IMEI number 359113102996970 with a blue case with black graffiti markings, currently in custody at the ATF Eugene Field Office, as described in Attachment A hereto,

located in the _____ District of _____ Oregon _____, there is now concealed *(identify the person or describe the property to be seized)*:
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with the intent to distribute fentanyl |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Heidi Wallace, per rule 4.1
_____
*Applicant's signature*

Heidi Wallace, Special Agent ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 9, 2024
_____

_____
*Judge's signature*

City and state: Eugene, Oregon
_____

Mustafa T. Kasubhai, United States Magistrate Judge
_____
*Printed name and title*

STATE OF OREGON, ss:                AFFIDAVIT OF HEIDI WALLACE

**Affidavit in Support of an Application**
**for a Search Warrant for a Phone**

I, Heidi Wallace being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), assigned to the Eugene Field Office.   I have been an ATF Special Agent
since 2003.   As such, I have investigated numerous violations of federal law, including
violations that have involved the use of computers and the internet.   Prior to becoming a Special
Agent, I worked at the ATF laboratory in Ammendale, Maryland, for a year and a half as an
Integrated Ballistics Identification System (IBIS) Specialist.   I have a bachelor's degree in
Sociology from the University of Michigan, and I have completed the Federal Law Enforcement
Training Center Criminal Investigators program, the ATF New Professional Training for Special
Agents program, and the ATF Advanced Interstate Nexus of Firearms and Ammunition course.
I have also received training in social media and its use in crimes especially relating to gun and
drug crimes.   I have investigated numerous violations of federal firearm and narcotics laws,
including violations that have involved the use of computers and the internet and how it relates to
the possession and sale of narcotics.   I have also investigated narcotics and firearm cases where
subjects have used their phones to conduct drug and firearm trafficking transactions.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search warrant authorizing the search and examination of a
Motorola cellphone, model XT2005-3, with IMEI number 359113102996970 and has a blue case
with black graffiti markings (hereinafter, "Device"), which is currently stored, in custodial law

**Page  1 – Affidavit of Heidi Wallace**

enforcement possession, at the ATF office in Eugene, Oregon.   The Device is described in Attachment A hereto, and this warrant application seeks the extraction of electronically stored information from the Device, as described in Attachment B hereto.   As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence of violation of Title 21 U.S.C. § 841(a)(1).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.      Title 21 U.S.C. § 841(a)(1) provides that it is unlawful for any person to manufacture, deliver or possess a controlled substance including fentanyl.

## Statement of Probable Cause

5.      On July 23, 2024, Kyle Abeene was arrested pursuant a federal arrest warrant based on a complaint charging him with possession with the intent to distribute fentanyl.   The Affidavit in Support of the Complaint and Arrest Warrant is attached as Exhibit 1 and incorporated fully herein.   As detailed in the Affidavit in Support of the Complaint, Abeene was involved in two deliveries of fentanyl to an ATF Confidential Informant (CI).   The first incident occurred on April 9, 2024.   In the days prior to that, Abeene and the CI texted one another

**Page  2 – Affidavit of Heidi Wallace**

discussing prices for fentanyl, locations to meet up, and messages back and forth regarding the times and dates of the deal.   On April 9, Abeene confirmed he was back and negotiations continued.   Later that day, the CI texted Abeene to say he/she was ready to meet.   Abeene indicated he was at the "Winco" on "Coburg Rd" in Eugene.   CI stated that he/she had $500 and wanted to confirm the price.   Abeene did not respond.   After waiting a little longer, Abeene responded that his phone was dead and to call him.   Later that day, the CI purchased ½ ounce of fentanyl for $500 from Abeene in a Safeway parking lot in Eugene.

7.        Abeene sold the CI fentanyl again the following month.   They negotiated via text messages for an ounce of fentanyl for $1000 based on a text with Abeene that read "6-325 Half-500 Full-1000." This was referencing prices for fentanyl would be $325 for 6 grams, $500 for a half ounce and a full ounce of fentanyl was $1000.   They then coordinate via text meeting to conduct the sale.   Abeene texted, "I'm not mobile rn I'm on Mohawk st in spfld."   He later added, "Meet me at lucky lizards on Mohawk and Q street."   The CI met with Abeene on May 3, 2024, and purchased half an ounce of fentanyl from Abeene for $500.   During that same contact Abeene stated that he would contact the CI after he re-upped his supply since he was short a full ounce of fentanyl the CI originally requested.

8.        Additionally, on May 11, 2024, Abeene was suspected to be concealing items in preparation for shoplifting at a Walmart in Springfield, Oregon.   Springfield Police knew that Abeene had an active warrant from parole and probation for coercion and set up to make the arrest outside the front doors.   Abeene spotted the officers as he exited the building and walked back into the store, where he was quickly arrested.   During the arrest he dropped a black case that contained approximately 92.3 grams of fentanyl in a sandwich bag and a scale.   He also

**Page  3  – Affidavit of Heidi Wallace**

dropped his cell phone which he was seen on the cameras using prior to contact with law enforcement.    When he was arrested, he claimed the cell phone was his, but said the black case was "not mine." This cell phone was not seized for evidence by SPD.

9.    On June 20, 2024, Agent Wallace received a federal warrant for the arrest of Kyle Abeene for Possession and Distribution of Fentanyl based on the above incidents.    During his subsequent arrest, law enforcement seized the Device from him.    The Device had a blue case that had some graffiti written on the case.    They also seized two portable chargers that appeared to fit the Device's charging port.

10.    The Device is currently in the lawful possession of the ATF office in Eugene, Oregon.    It came into the ATF's possession in the following way: I received a phone call from the Lane County jail that Kyle Abeene was picked up the morning of July 24th and transported to the U.S. Marshals at the federal courthouse in Eugene the next day.    The jail contacted me and wanted to know if ATF was able to come and pick up items.    I picked up the property, which was a large black plastic bag, that tied shut, from the Lane County jail on July 29th.    The bag contained the Device.

11.    The Device is currently in storage in the evidence room of the ATF Eugene Field Office in Eugene, Oregon.    In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

12.    Based on my training and experience and knowledge of this case, I believe the Device contains evidence of Abeene's drug trafficking.    As indicated above, he used text

**Page  4  – Affidavit of Heidi Wallace**

messaging on his phone to negotiate the price for the sale of fentanyl and coordinate the location

to meet to conduct the drug deal.   Thus, Abeene uses his phones to conduct his criminal activity,

communicating with drug customers and carrying it with him to drug deals.   It is unclear if this

is the same phone he had on May 11.   However, I am aware that even if a new phone was

obtained, individuals typical transfer contact information, text messages, photos and other data to

new phones.

       13**.**    Based on my training and experience, a wireless telephone (or mobile telephone,

or cellular telephone) is a handheld wireless device used for voice and data communication

through radio signals.   These telephones send signals through networks of transmitter/receivers,

enabling communication with other wireless telephones or traditional "land line" telephones.   A

wireless telephone usually contains a "call log," which records the telephone number, date, and

time of calls made to and from the phone.   In addition to enabling voice communications,

wireless telephones offer a broad range of capabilities.   These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and storing text

messages and email; taking, sending, receiving, and storing still photographs and moving video;

recording, storing and playing back audio files; storing dates, appointments, and other

information on personal calendars; and accessing and downloading information from the

Internet,[1] including the use of apps.[2]   Wireless telephones may also include a global positioning

system ("GPS") technology for determining the location of the device.

---

[1]   The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

[2]   Apps is an abbreviation for applications.   An app is a self-contained program or piece of

**Page  5  – Affidavit of Heidi Wallace**

14.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, internet search engines, Apps that can store money and text messages that can contain data and photos.   In my training and experience, examining data stored on wireless telephones can uncover, among other things, evidence that reveals or suggests who possessed or used the phone, how the phone was used, and the purpose of its use.

15.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence will be on the Device because, based on my knowledge, training, and experience, I know:

a.     *Wireless telephone*.   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and

_____

software designed to fulfill a particular purpose.   An app can run on the Internet, on a computer, on a cell phone, or on other electronic devices.

email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

> b.     Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet.   Electronic files downloaded to a storage medium can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

> c.     Wholly apart from user-generated files, the Device may contain electronic evidence of how it has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating systems or application operations, and file system data structures.

> d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

> e.     Data on the Device can provide evidence of a file that was once on the

**Page  7  – Affidavit of Heidi Wallace**

Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Systems can leave traces of information on the Device that show what tasks and processes were recently active.   Web browsers, email programs, and chat programs store configuration information on the Device that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of peripherals, including SD cards or other flash media, and the times the Device was in use.   File systems can record information about the dates files were created and the sequence in which they were created.

    f.  Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    g.  A person with appropriate familiarity with how the Device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the Device was used, the purpose of its use, who used it, and when.

    h.  The process of identifying the electronically stored information necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on the Device is evidence may depend on other information stored on the Device and the application of knowledge about how a Device functions.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    i.  Further, in order to find evidence of how the Device was used, the purpose of its use, who used it, and when, the examiner may have to establish that a particular thing is not

**Page  8  – Affidavit of Heidi Wallace**

present on the Device.

16.     *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device's consistent with the warrant.   The examination may require authorities to employ techniques, including imaging the Device and computer-assisted scans and searches of the entire Device that might expose many parts of the device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

17.     The initial examination of the Device will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.   The government shall complete this review within 180 days of the date of execution of the warrant.   If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

18.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

19.     If an examination is conducted, and it is determined that the Device does not

**Page 9 – Affidavit of Heidi Wallace**

contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

20.     If the Device contains evidence, fruits, contraband, or is an instrumentality of the crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

21.     The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

22.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

23.     Based on the foregoing, I have probable cause to believe, and I do believe, that the Device described in Attachment A contains evidence of possession with the intent to distribute fentanyl, in violation of, Title 21, United States Code, Sections 841(a)(1) as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the

**Page  10  – Affidavit of Heidi Wallace**

Device described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

24.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Joseph Huynh, and AUSA Huynh advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.


/s/ Heidi Wallace, per rule 4.1

_____
Heidi Wallace
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _9:20am_ a.m/p.m. on ___August 9, 2024___ .

_____
MUSTAFA T. KASUBHAI
United States Magistrate Judge

**Page  11  – Affidavit of Heidi Wallace**

DISTRICT OF OREGON, ss:          AFFIDAVIT OF HEIDI WALLACE

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Heidi Wallace, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been since August 2003.  My current assignment is in the Eugene Field Office.  My training and experience includes I graduated from the Special Agent Basic Training Program at the ATF National Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have conducted multiple investigations into the unlawful possession and use of firearms, manufacturing of firearms, theft of firearms from Federal Firearm Licensed Dealers, the possession and distribution of controlled substances, and trafficking cases associated with firearm and narcotic offenses.  During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) and drug trafficking cases.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Kyle Winston Abeene for Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1).  As set forth below, there is probable cause to believe, and I

**Page 1 – Affidavit of Heidi Wallace**

Exhibit 1
Page 1 of 7

do believe, that Kyle Winston Abeene committed distribution of a controlled substance-Fentanyl in violation of 21 U.S.C. § 841(a)(1).

3.    This complaint is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.    Title 21 U.S.C. § 841(a)(1) provides that it is unlawful for any person to manufacture, deliver or possess a controlled substance including fentanyl.

## Statement of Probable Cause

### A.    Possession and Distribution of Fentanyl on April 8, 2024

5.    On April 6, 2024, CI 31721 received a text from Abeene asking CI 31721 if he/she wanted to buy some "3pks for 140".  This text referenced selling 3grams of fentanyl for $140.  CI 31721 did not reply.  Approximately nine hours later, Abeene reached out to CI 31721 again and this time said, "Aye I got a deal rn if u interested 9gs for 350."  This text was referring to 9 grams of fentanyl for $350.  CI 31721 did not reply.  On April 7, CI 31721 texted Abeene, "You still have?"  Abeene responded yes\ but not at the deal he had last night.  He told CI 31721 that he was back to "regular prices."  CI 31721 did not immediately respond.

/ / /

**Page 2 – Affidavit of Heidi Wallace**

Exhibit 1
Page 2 of 7

6.      On April 8, Abeene asked CI 31721 if they were back in town and the CI responded a few hours later, "Yeah I'm back."  Abeene responded, "K well I was saying if you need something, let me know."  On April 9, CI 31721 replied, "Yeah. If you to can do a ¼ maybe a ½ that would be great."  CI 31721 was asking for ¼ to a ½ ounce of fentanyl as those were the quantities discussed by Abeene over the past two days. Abeene directed CI 31721, "Call me."  CI 31721 tried calling Abeene and was not able to talk to Abeene.  Later that same day, CI 31721 texted Abeene to say he/she was ready to meet.  Abeene indicated he was at the "Winco" on "Coburg Rd" in Eugene.  CI 31721 stated that he/she had $500 and wanted to confirm the price.  Abeene did not respond.  After waiting a little longer, Abeene responded that his phone was dead and to call him.

7.      Eventually the deal was set up for approximately 7:00 p.m. at the Safeway on 18th Street in South Eugene.  CI 31721 was searched prior to the deal and no contraband was located. CI 31721 was provided $500 of ATF money to purchase a ½ ounce of fentanyl and a recording device.   Law enforcement conducted surveillance during the meet.

8.      Abeene arrived in the front passenger seat of a green Mitsubishi eclipse with Oregon plates 573GHS.  He exited the front passenger seat with a black backpack and a sports jersey and walked over to CI 31721s vehicle.  EPD Surveillance Units that had a view of the vehicles confirmed that the person meeting with the CI was Abeene based on their previous interactions with Abeene and from an Oregon Driver's License photo showed to them at the briefing.  Abeene then entered the front passenger seat.  CI 31721 provided Abeene with $500 and Abeene gave CI 31721 a box with a ball of foil.

9.      During the deal, Abeene told CI 31721 about how he was contacted by SPD on

**Page 3 – Affidavit of Heidi Wallace**

Exhibit 1
Page 3 of 7

March 28.  He said he and his girl were in an Uber and the cops pulled over the vehicle they

were in.  Before the police contacted him, he gave about $1500, an ounce and a half of "fetty"

(fentanyl) and a scale to his girlfriend and told her to chuck it or put it in her bra.  He said he was

in jail until Sunday and when he got out, his girlfriend had $700 cash and 14 grams of "fetty"

left.  Abeene told the police that the money they seized from him he got from his family to buy a

car.  SPD also searched his house and did not find anything.  A Springfield Officer told him that

they knew he was selling drugs and Abeene told the officer that he was selling drugs back in

2016.  Abeene said he knew that by saying that year it would be beyond the "statute of

limitations."   Abeene told CI 31721 that he has his stash stored in multiple places "a piece here,

a piece here, a piece here, all around Eugene."  He explained that he does it this way, so he does

not get caught with any large quantity of drugs at one time.  After this conversation, Abeene got

out of CI 31721's vehicle and went back to the green Mitsubishi vehicle and remained in the lot.

CI 31721 left the lot and traveled northbound on Oak St.

10.    After the deal, CI 31721 provided law enforcement with the recording device and

a box with a ball of foil.  Inside the foil was a substance weighing approximately 13.7 grams that

field tested positive for fentanyl.

**B.    Possession and Distribution of Fentanyl on May 3, 2024**

11.    On May 3, 2024, CI 31721 made a purchase of fentanyl in Springfield from

Abeene.  Initially the deal was set for May 1, for an ounce of fentanyl for $1000 based on a text

with Abeene for "6-325 Half-500 Full-1000."  CI 31721 texted Abeene that he/she would call

around 12:30pm and asked where they should meet up.  After getting no response after about an

hour, CI 31721 texted again and asked, "Hey you around?" Abeene responded, "Yeah." CI

**Page 4 – Affidavit of Heidi Wallace**

Exhibit 1
Page 4 of 7

31721 responded, "Ok Cool. Ill give you a call in a bit. Word" Abeene responded "Fasho."

Approximately an hour later, CI 31721 told Abeene that he/she needed about 45 minutes till they

could meet.  Abeene asked, "U still need?" CI 31721 confirmed yes and asked again where they

should meet.  Abeene responded, "I'm not mobile rn I'm on Mohawk st in spfld."  Abeene is

known to law enforcement as not having his own car so that meant he was on foot in that area.

CI 31721 responded that they could be there in about 30 mins and asked where they should meet.

Abeene responded, "Meet me at lucky lizards on Mohawk and Q street."

12.     CI 31721 was provided a recording device and $1000 in ATF funds for the

purchase of an ounce of fentanyl.   Law enforcement units followed CI 31721 to the parking lot

of Lucky Lizard, 1979 Mohawk Blvd., Ste Q in Springfield to meet with Abeene.  They observed

Abeene walk from an area of the parking lot to CI 31721's vehicle and get inside.  CI 31721

attempted to give Abeene $1000, but Abeene only had a ½ ounce of fentanyl on him.  He told CI

31721 that he was headed to Portland soon for more and would hit him/her up when he returned

to town for the other ½ ounce.  CI 31721 provided $500 to Abeene and received a clear plastic

bag containing a white substance consistent with fentanyl that was tied off in a plastic knot on

top.  After the deal, Abeene exited the vehicle and walked to another area of the parking lot and

disappeared around a corner.

13.     CI 31721 provided the suspected fentanyl and the remaining $500 of ATF funds

to law enforcement.  Inside the bag was approximately a half ounce of a white substance that

later field tested positive for fentanyl.  The weight of the drugs and plastic bag was 12.8 grams.

### C.     Possession of Fentanyl for Distribution on May 11, 2024

14.     On May 11, 2024, Walmart contacted the SPD regarding numerous people in the

**Page 5 – Affidavit of Heidi Wallace**

Exhibit 1
Page 5 of 7

store that were concealing items in preparation of shoplifting. Two of the suspects were identified as Kyle Abeene and his girlfriend Cassidy Hathaway. Dispatch confirmed Abeene had an active warrant from Parole and Probation for Coercion.

15.    Law enforcement went inside the Walmart to view the loss prevention monitors to advise the other officers when Abeene was exiting the store. Two other officers were waiting outside the west exit. When Abeene and Hathaway exited Walmart and the officers began to approach Abeene who had his cell phone in his hand, he immediately turned and went back into Walmart. One officer remained with Hathaway and the other went after Abeene.

16.    The Officer yelled out "Kyle" as she walked towards the deli/vegetable area of the store. The officer quickly apprehended Abeene because she saw him reaching into his left shorts pocket and she did not know what he was grabbing, and it could possibly be a weapon. Walmart videos showed Abeene return to the store and grabbing at something in his shorts pocket on his left side where there was a bulge. She grabbed both of Abeene's hands and put them behind his back as Abeene's feet were still shuffling away from the officer. Abeene asked what was going on and Officer Loper told him that she had a warrant for his arrest.

17.    Once he was in handcuffs, the officer picked up Abeene's cell phone and a small black case that were on the ground near where they were standing. The case was about 8x6 inches, black in color and had a zipper. Abeene quickly said "that's not mine." The Officer escorted Abeene out to her patrol car with the case and cell phone.

18.    Inside the black case was a large amount of a white powdery substance suspected to be fentanyl and a digital scale. Prior to lodging the substance into evidence, it weighed 92.3 grams in the sandwich bag. The substance later field tested positive for fentanyl. Based on my

**Page 6 – Affidavit of Heidi Wallace**

Exhibit 1
Page 6 of 7

training and experience, this amount of fentanyl along with the digital scale indicates an intent to distribute the drugs.

### Conclusion

19.     Based on the foregoing, I have probable cause to believe, and I do believe, that Kyle Winston Abeene committed the crime of distribution of a controlled substance-Fentanyl in violation of 21 U.S.C. § 841(a)(1).  I therefore request that the Court issue a criminal complaint and arrest warrant for Kyle Winston Abeene.

20.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Joseph Huynh, and AUSA Huynh advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/s/ Heidi Wallace, per rule 4.1

_____
Heidi Wallace
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _____ 12:15pm a.m/p.m. on _____.  June 20, 2024

_____
MUSTAFA T. KASUBHAI
United States Magistrate Judge

**Page 7 – Affidavit of Heidi Wallace**

Exhibit 1
Page 7 of 7

**ATTACHMENT A**

**Device to Be Searched**

A Motorola cellphone, model XT2005-3, with IMEI number 359113102996970 with a a

blue case with black graffiti markings that is currently in custody located on the premises of the

ATF Eugene Field Office in Eugene, Oregon 97402.

**Attachment A**

## ATTACHMENT B

## Items to Be Seized

1.      All records on the Device described in Attachment A that relate to violations of Title 21 U.S.C. 841(a)(1) since April 1, 2024, including:

        a.      Text messages whether conducted through an App or over the phone's specific messaging method relating to drug transactions.

        b.      Lists of customers and related identifying information.

        c.      Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

        d.      Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

        e.      Any information recording Abeene's schedule or travel from April 1, 2024, to the present.

        f.      All bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Records evidencing the use of the Internet, including:

        a.      Records of Internet Protocol addresses used.

        b.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

**Page 1 – Attachment B**

entered into any Internet search engine, and records of user-typed web addresses.

      c.      Records of data storage accounts and use of data storage accounts.

4.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5.      The examination of the Device may require authorities to employ techniques, including imaging the Device and computer-assisted scans and searches of the entire Device that might expose many parts of the Device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

6.      The initial examination of the Device will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.  The government shall complete this review within 180 days of the date of execution of the warrant.  If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

7.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data

**Page 2 – Attachment B**

falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.     If an examination is conducted, and it is determined that the Device does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phone, absent further authorization from the Court.

9.     If the Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

10.     The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 3 – Attachment B**